IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

NOV 2 6 2013

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| ASARCO LLC, | § | |
| *Debtor.* | § | Bankruptcy Case No. 05-21207 |
| | § | |
| | § | |
| ASARCO LLC, et. al | § | |
| *Appellants,* | § | |
| | § | |
| v. | § | Case No. 2:11-cv-291 |
| | § | |
| Stutzman, Bromberg, Esserman | § | |
| & Plifka, a Professional Corporation, | § | |
| *Appellee.* | § | |

## MEMORANDUM OPINION AND JUDGMENT

### I. BACKGROUND

This bankruptcy appeal involves a fee enhancement granted to Stutzman, Bromberg,

Esserman & Plifka, A Professional Corporation ("Stutzman" or "Appellee").  The enhancement

was awarded for Stutzman's work in litigation springing from the bankruptcy of ASARCO, Inc.,

which resulted in a successful reorganization and the formation of ASARCO LLC ("ASARCO").

The United States Trustee, Judy A. Robbins, joins the appeal, challenging issues surrounding the

fee enhancement.

ASARCO, Inc. was a mining and smelting company as well as the parent of Subsidiary Debtors facing massive asbestos liability.[1]  Its bankruptcy involved numerous complex issues, including personal injury and environmental claims totaling several billion dollars. (Mem. Op. on Final Appl. of Stutzman, Bromberg, Esserman & Plifka For Approval of Att'ys' Fees and Expenses Incurred As Counsel for the Official Committee of Asbestos Claimants From April 11, 2005 Through January 31, 2012, As Am. And Supplemented, July 20, 2011, *In re ASARCO, LLC* (No. 05-21207), Doc. No. 16252) [hereafter Mem. Op. SBEP].  The bankruptcy has been characterized as "the largest environmental bankruptcy in U.S. history." *Id.* (citing *ASARCO Parent Pays $1.79 Billion in Record Environmental Bankruptcy Settlement*, Environmental News Service (Dec. 10, 2009), http://www.ens-newswire.com/ens/dec2009/2009-12-10-092.asp).  Among the environmental issues were the asbestos cases, which included the particularly complex "Alter Ego" liability issue. (Mem. Op. SBEP at 11).

In the Alter Ego litigation, ASARCO faced the Asbestos Fiduciaries, which included the Committee of Asbestos Claimants as well as the Bankruptcy Court-appointed Future Claimants Representative, Robert C. Pate, and his counsel, Oppenheimer, Blend, Harrison & Tate, Inc. (now Strasburger Price Oppenheimer Blend). (Br. for Stutzman, Doc. No. 22 at 3).[2]  Stutzman

---

[1] "Subsidiary Debtors," as that term is used herein, include: Lac d' Amiante du Québec Ltée (f/k/a Lake Asbestos of Quebec, Ltd.); Lake Asbestos of Quebec, Ltd.; LAQ Canada, Ltd.; CAPCO Pipe Company, Inc. (f/k/a Cement Asbestos Products company); and Cement Asbestos Products Company.

[2] Although the Asbestos Fiduciaries worked together in the Alter Ego litigation, the Bankruptcy Court wrote two separate fee award opinions for Stutzman and Oppenheimer/Pate.  Despite this, the Bankruptcy Court awarded all Asbestos Fiduciaries a 10% fee enhancement due to their role in obtaining the Alter Ego litigation's rare and exceptional results.  The Bankruptcy Court made factual findings in each opinion referencing the efforts of all Asbestos Fiduciaries. *See, e.g.*, (Mem. Op. on Final Appl'n With Respect To: (1) Oppenheimer, et al., For Approval of Att'ys' Fees and Expenses Incurred As Counsel for the Official Committee of Asbestos Claimants, July 20, 2011, *In re ASARCO, LLC* (No. 05-21207), Doc. No. 16251 at 8, 10, 12, 18) [hereafter Mem. Op. OBHT & Pate] (referencing the Asbestos Fiduciary's role in obtaining the Alter Ego litigation's "rare and exceptional" results); (Mem. Op. SBEP at 23) (referencing the Asbestos Fiduciary's achievement of "extraordinary results in the alter ego litigation").

represented the Committee of Asbestos Claimants, which consisted of creditors with asbestos claims against ASARCO and its Subsidiary Debtors.[3] (Mem. Op. SBEP at 3-4).

Since the subsidiaries could not financially respond to these damages claims, Stutzman and the other Asbestos Fiduciaries sought to prosecute asbestos claims amounting to several billion dollars directly against ASARCO. (Mem. Op. SBEP at 11). Although some of its subsidiaries were involved in the asbestos business, ASARCO denied all liability, claiming, *inter alia,* that it was a distinct corporation from the companies involved.

A major aspect of the Alter Ego litigation was the Alter Ego Estimation Proceeding, which sought to determine ASARCO's direct and indirect asbestos liability. *Id.* ASARCO initially made what was effectively a nuisance settlement offer of $17 million dollars. Eventually, after four years of hard work, the nuisance settlement evolved into the Asbestos Personal Injury Settlement Trust, which was funded with approximately one billion dollars in assets.[4] In exchange, ASARCO obtained a Section 524(g) injunction, paving the way for ASARCO's successful reorganization. (Mem. Op. SBEP at 14). This settlement occurred after the Asbestos Fiduciaries uncovered evidence of ASARCO's pervasive involvement in the Subsidiary Debtors' business affairs, implicating ASARCO's alter ego liability. *See* (Asbestos Fiduciaries' Trial Br. on the Alter Ego Litigation, *In re ASARCO, LLC* (No. 05-21207), Doc. No. 12463) (presenting extensive evidence of parent ASARCO's derivative asbestos liability due to its domination/control of the subsidiaries).

The Bankruptcy Court awarded a $451,131.00 fee enhancement to Stutzman pertaining to its work on the Alter Ego litigation. (Mem. Op. SBEP at 23). This enhancement equaled 10% of

---

[3] Due in large part to this asbestos liability, the Subsidiary Debtors actually preceded their parent into bankruptcy.

[4] The Parties do not dispute the trust fund amount. *See* (Oct. 25, 2012 Mot. Hr'g, Doc. No. 42 at 31) (ASARCO's counsel stating the trust contained assets "just shy of 1 billion. We can round it to 1 billion.").

Stutzman's fees resulting from the Alter Ego litigation. The Bankruptcy Court also awarded fees for services related to the preparation and defense of Stutzman's Final Fee Application and the Enhancement Application. In awarding the enhancement, the Bankruptcy Court focused largely on Stutzman's role in obtaining the exceptional result and Stutzman's high quality of work, finding that:

> SBEP [Stutzman] and the other asbestos fiduciaries did achieve extraordinary results in the alter ego litigation, reaching a settlement which ultimately paid the asbestos claimants nearly one billion dollars. While the alter ego lawsuit was not tried to a conclusion, the settlement was achieved as a direct result of the exceptional legal work of the asbestos professionals. This result was also a "win-win" solution for both the asbestos claimants and the Parent in that it provided the claimants a sum which was arguably at the high end of reasonable settlement figures while at the same time provided the Parent with both a consenting class of creditors and a Section 524(g) injunction. The Court believes that an enhancement based upon a 10% increase . . . is appropriate.

(Mem. Op. SBEP at 23).

In addition to the fee enhancement, the Bankruptcy Court also awarded costs for the original fee application's preparation and defense; costs for the preparation and defense of the fee enhancement; and post-judgment interest. On appeal, ASARCO makes essentially four main arguments in its briefs, oral argument, and subsequent filings to the Court. First, ASARCO argues the enhancement was erroneous. Second, ASARCO argues Stutzman should not be entitled to recover any fees and expenses spent on its fee application or its fee enhancement application. Third, ASARCO argues that Stutzman should not be able to receive any post-judgment interest on its final fee awards. Fourth, ASARCO argues that Stutzman should not be able to receive the costs expended on appeal. The United States Trustee joins ASARCO in objecting to fee and expense awards for prosecuting the fee enhancement and the award of post-judgment interest. The Court will consider each argument in turn.

## II. DISCUSSION

### A. The Enhancement

ASARCO raises multiple objections against the fee enhancement granted for Stutzman's work on the Alter Ego litigation. While the United States Trustee also initially objected to the fee enhancement, she has since withdrawn her objections due to an intervening Fifth Circuit decision.[5] First, ASARCO argues that the Bankruptcy Court should have applied the standard in *Perdue v. Kenny A. ex rel. Winn* and rejected the fee enhancement. (Br. for ASARCO, Doc. No. 21 at 13) (citing *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542 (2010)). Second, ASARCO argues that even under established fee enhancement standards, Stutzman is not entitled to an enhancement. ASARCO also argues that the "rare and exceptional" finding should be reviewed de novo as a mixed question of fact and law. (Post-Hr'g Letter Br. for ASARCO, Doc. No. 48).

### (i) Legal Framework and *Perdue*

Stutzman seeks a fee award under 11 U.S.C. § 330(a)(1), which awards "(A) reasonable compensation for actual, necessary services rendered by the . . . attorney . . . and (B) reimbursement for actual, necessary expenses." The Fifth Circuit has explicitly rejected *Perdue*'s applicability in calculating these bankruptcy fee awards. *See In re Pilgrim's Pride Corp.*, 690 F.3d 650 (5th Cir. 2012). *Pilgrim's Pride* primarily concerned whether *Perdue* "unequivocally, *sub silentio* overruled" existing Fifth Circuit precedent in the bankruptcy arena.

---

[5] In her Letter of Notification Concerning Supplemental Authority, the United States Trustee recognized that under *In re Pilgrim's Pride Corp.*, 690 F.3d 650 (5th Cir. 2012), "the Fifth Circuit held that bankruptcy courts have 'broad discretion' in granting fee enhancements and may double count factors already included in the lodestar calculation in rare and exceptional circumstances . . . that are supported by detailed findings from the bankruptcy court and specific evidence in the record. The Fifth Circuit also held that . . . *Perdue* . . . does not apply in bankruptcy cases." (Doc. No. 32) (internal citations omitted).

In turn, the United States Trustee withdrew her objections to the fee enhancement because *Pilgrim's Pride* required fee enhancements to be reviewed under 'abuse of discretion,' and the United States Trustee saw "no abuse of discretion . . . because the bankruptcy court found rare and exceptional circumstances, supported by detailed findings that were based on specific evidence in the record." *Id.* The United States Trustee preserved her objections to the award of fees expended to obtain an enhancement and post-judgment interest on fee awards.

*Id.* at 652.  In concluding that *Perdue* did not overrule existing precedent, the Fifth Circuit observed that *Perdue* was unique to fee shifting cases and did not alter or even address the well-established approach to calculating bankruptcy fee awards. *Id.* at 667.  Therefore, contrary to ASARCO's assertions, *Perdue* does not apply to bankruptcy fee enhancement analysis.

To determine fee awards and enhancements under Section 330's "reasonable compensation" standard, the Fifth Circuit applies a two-step framework. *See Pilgrim's Pride*, 690 F.3d at 656 (internal citations omitted).  First, courts calculate the "lodestar," *id.* at 656 (citing *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005)), which is "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work[,]" *id.* at 655 (citing *In re Lawler,* 807 F.2d 1207, 1211 (5th Cir.1987)).  Next, courts may grant upward or downward adjustments based on the factors listed in *Johnson v. Georgia Highway Exp., Inc.* and Section 330 of the Bankruptcy Code. *Id.* (citing *Johnson*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); 11 U.S.C. § 330(a)).[6]

Generally, courts presume that the lodestar calculation already accounts for four particular *Johnson* factors: (1) novelty and complexity of issues, (2) counsel's special skill and

---

[6] *Blanchard* was a Section 1988 fee shifting case.  There, the Court abrogated *Johnson's* holding that contingency-fee agreements cap awards for attorneys' fees in fee shifting cases. *Blanchard*, 489 U.S. at 93.  The actual *Johnson* factors are not affected by *Blanchard* and remain instructive.

The *Johnson* factors are: (1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) award in similar cases. *Johnson*, 488 F.2d at 717-19.

Section 330 contains a non-exhaustive list of fee factors in subsection (a)(3): "(A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered towards the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

experience, (3) quality of the representation, and (4) results obtained. *Pilgrim's Pride*, 690 F.3d at 656 (citing *In re Fender*, 12 F.3d 480, 488 (5th Cir. 1994)).  Thus, enhancements based on these four factors require "rare and exceptional" circumstances. *Id.*   In these unusual circumstances, "[a] court may . . . 'double count' one or more of these presumably subsumed *Johnson* factors . . . ." *Id.* at 659.

Notably, the Bankruptcy Court did not award an enhancement based upon Stutzman's complete body of work in this case, as Stutzman had requested.  Instead, it tailored and limited the awards to one discreet facet.[7]  As discussed above, the Bankruptcy Court's justification for awarding a fee enhancement was based on Stutzman's high quality of work, which contributed to the Alter Ego litigation's results.  Since the lodestar calculation presumably accounts for both the quality of representation and the results obtained, the Bankruptcy Court's fee enhancement requires rare and exceptional circumstances.

Fee enhancements are reviewed for abuse of discretion.   "[B]ankruptcy judges have broad discretion in determining the amount of attorneys' fees in bankruptcy and . . . their exercise of that discretion cannot be disturbed by a district court on appeal absent a showing that it was abused." *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1091 (5th Cir. 1980); *see also Pilgrim's Pride*, 690 F.3d at 656 ("[B]ankruptcy courts have 'considerable discretion' when determining whether an upward or downward adjustment of the lodestar is warranted.").  Consistently, the rare and exceptional circumstances finding in a result-based enhancement is also reviewed for abuse of discretion. *See Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1092 (5th Cir. 1980).  Therefore, contrary to ASARCO's contentions, *see* (Post-Hr'g Letter Br. for

---

[7] This Court finds that tailored, result-based enhancements are acceptable, if not preferable, under Section 330 for three reasons.  First, there is nothing prohibiting tailored, result-based enhancements in Section 330 or Fifth Circuit case law.  Second, there is Fifth Circuit precedent supporting tailored enhancements. *See Matter of Lawler*, 807 F.2d 1207, 1213 (5th Cir. 1987) (applying the contingency fee factor to enhance part of the overall award).  Third, the tailored enhancement involves a level of scrutiny from bankruptcy courts that should not be discouraged.

ASARCO LLC),[8] this Court will review the Bankruptcy Court's finding of rare and exceptional

circumstances for abuse of discretion.

### (ii) Fee Enhancement Analysis

Under non-*Perdue* standards, ASARCO argues that Stutzman is not entitled to a fee

enhancement for three reasons: (1) exceptional results by themselves cannot justify fee

enhancements as a matter of law, (Br. for ASARCO at 26-27), (2) the rare and exceptional

results were attributable to several factors rather than Stutzman's involvement alone, (Br. for

ASARCO at 28), and (3) the Bankruptcy Court provided "no rationale" for the 10% fee

enhancement figure, (Br. for ASARCO at 27-28).[9]

ASARCO's first argument does not demonstrate the Bankruptcy Court's enhancement

award fails as a matter of law.  While it is true that result-based enhancements are impermissible

without rare and exceptional circumstances, the Bankruptcy Court found such circumstances in

conformity with Fifth Circuit precedent.  As the Fifth Circuit has explained, rare and exceptional

circumstances in result-based enhancements include situations where "applicants . . . provided

superior services that produced outstanding results . . . ." *Pilgrim's Pride*, 690 F.3d at 660.[10]

Consistent with the dictates of the Fifth Circuit, courts have found or affirmed rare and

exceptional results permitting fee enhancements when counsel obtained large monetary benefits

---

[8] ASARCO argues that the "rare and exceptional" circumstances finding is a mixed question of law and fact subject to de novo review. (Post-Hr'g Letter Br. For ASARCO).  In support, ASARCO cites case law applying 11 U.S.C. § 328 that concluded "the question whether developments were 'not capable of being anticipated' is, at the very least, a mixed question of law and fact, if not a pure question of law . . . ." *Id.* (internal citations omitted).  Since there is case law directly addressing the standard of review applied for Section 330 fee enhancements and the "rare and exceptional" circumstances finding, this Court declines to apply Section 328 case law on results 'capable of being anticipated' to a Section 330 'rare and exceptional' analysis. *See also infra* note 13.

[9] ASARCO's initial briefs largely focused on *Perdue*'s applicability; they only argued in passing under non-*Perdue* standards.  However, their subsequent briefs focus on the second and third arguments.

[10] The Fifth Circuit explained: "[u]pward adjustments . . . are still only permissible in rare and exceptional circumstances—such as in *Rose Pass Mines* and *Lawler*, where the applicants had provided superior services that produced outstanding results—that are supported by detailed findings from the bankruptcy court and specific evidence in the record." *Pilgrim's Pride*, 690 F.3d at 660.

for their clients. *See Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1092 (5th Cir. 1980) ("We have previously permitted an enhancement . . . where 'counsel did succeed in accomplishing a substantial recovery for their clients [sic] money which might well have been totally lost but for their efforts.' Considering the excellent quality of the legal services provided by Simon . . . we cannot say that the bankruptcy judge's enhancing Simon's compensation by . . . a 16 percent increase, constituted an abuse of his discretion.") (*citing Wolf v. Frank*, 555 F.2d 1213, 1218 (5th Cir. 1977) (allowing a 33% enhancement)); *see also Matter of Lawler*, 807 F.2d 1207, 1213 (5th Cir. 1987) (awarding a 70% enhancement based on the exceptional results obtained, unusual nature of the case, novel legal questions, and counsel's "outstanding professional accomplishment" in handling the case).

The Bankruptcy Court found that Stutzman's superior performance directly caused the extraordinary result: "SBEP [Stutzman] and the other asbestos fiduciaries did achieve extraordinary results . . . reaching a settlement which ultimately paid the asbestos claimants nearly one billion dollars . . . . [T]he settlement was achieved as a direct result of the exceptional legal work of the asbestos professionals [such as Stutzman]." (Mem. Op. SBEP at 23).[11]

---

[11] ASARCO's only argument against the "rare and exceptional" circumstances finding is that asbestos claims and settlements are "very common." (Oct. 25, 2012 Mot. Hr'g at 23-24). However, the Bankruptcy Court did not award a fee enhancement merely because the asbestos claims were settled. Rather, the enhancement was based on the hurdles that were overcome to achieve that settlement, and the exceptional results achieved by the Asbestos Fiduciaries. (Mem. Op. SBEP at 23). In addition to being an exceptional result for the claimants, it also enabled ASARCO to emerge from bankruptcy in an exceptionally healthy state. ASARCO has not demonstrated that the Bankruptcy Court abused its discretion in finding the existence of rare and exceptional circumstances. That finding is necessarily a very case-specific holding and not to be governed by other cases.

ASARCO's arguments do not seriously challenge this finding,[12] and ASARCO has not demonstrated that the Bankruptcy Court's enhancement fails as a matter of law.[13]

ASARCO's second argument invoking a "coalescence of factors" also does not indicate that the Bankruptcy Court abused its discretion in crediting Stutzman for the Alter Ego litigation's rare and exceptional results.[14]  ASARCO's coalescence of factors argument states that:

> [C]opper price increases, the Parent's desire to retain ownership and control of the Debtor . . . , the Parent's desire to end environmental and asbestos litigation, the Court and how it conducted the case, and the work of various professionals all contributed to the unexpected success of the ASARCO bankruptcy.

(Br. for ASARCO at 28); *see also* (Reply Br. for ASARCO, Doc. No. 28 at 5) (presenting the same "coalescence of factors" argument).

Based upon these listed factors, ASARCO objects that "the 'alter ego' settlement was not explicitly identified as a factor in the success of the bankruptcy." (Post-Hr'g Resp. Br. for ASARCO, Doc. No. 47 at 5).  Instead, ASARCO argues the Alter Ego litigation only constituted a subpart of one factor and therefore the settlement is insufficiently connected to the bankruptcy's result. (Post-Hr'g Resp. Br. for ASARCO at 5).

---

[12] Stutzman's status as creditors' attorneys does not change the fee enhancement analysis; Section 330 does not distinguish between debtors' and creditors' attorneys, and courts have applied the same fee enhancement analysis for both. *See In re Hillsborough Holdings Corp.*, 191 B.R. 937 (Bankr. M.D. Fla. 1995) (awarding a 10% fee enhancement of all fees to asbestos liability claimants' counsel for successful results obtained by (1) initiating contact with the parent, (2) causing competing plans to emerge and challenge the debtors' reorganization strategy and, (3) formulating a competing plan of reorganization which forged a consensus).

[13] If this Court were to use the de novo standard under ASARCO's theory that the issue was a mixed question of fact and law, ASARCO's challenge would still fail as the law and record support the Bankruptcy Court's finding.

[14] As part of their argument, ASARCO also claims there was no specific finding that the Asbestos Fiduciary's work on the settlement was integral to the result, barring the fee enhancement as a matter of law. (Br. For ASARCO at 28).  ASARCO is mistaken.  The Bankruptcy Court made this precise finding, stating that "SBEP [Stutzman] and the other asbestos fiduciaries did achieve extraordinary results . . . reaching a settlement which ultimately paid the asbestos claimants nearly one billion dollars" and that "the settlement was achieved as a direct result of the exceptional legal work of the asbestos professionals [such as Stutzman]." (Mem. Op. SBEP at 23); *see also id.* at 14 (stating that ASARCO's successful reorganization was "due in large part" to Stutzman's efforts).

As a preliminary matter, this Court notes that, in context, the Bankruptcy Court's listing was not exhaustive and was mentioned as a basis for denying the enhancement requested for the entire case. As ASARCO observes, Stutzman's fee enhancement only related to the Alter Ego litigation's results. (Oct. 25, 2012 Mot. Hr'g at 11) (ASARCO's counsel arguing that "the bankruptcy court in this case awarded the asbestos fiduciaries a fee enhancement based on the alter ego litigation alone . . . . [A]ny discussion today about other events, other services, other extraordinary results, other whatever is not relevant to the fee enhancement"). Therefore, the relevant evaluation is whether Stutzman may be credited with the Alter Ego litigation's results, which in turn contributed to the overall bankruptcy results.[15] ASARCO concedes the coalescence of factors they cited all relate to the overall bankruptcy's result rather than the Alter Ego litigation's results. *See* (Br. for ASARCO at 28) (referencing that work among the coalescence of factors contributing to the "success of the ASARCO bankruptcy."); (Reply Br. for ASARCO at 5) ("The Asbestos Fiduciaries' assertions might lead one to believe that they were singularly responsible for the 'rare and exceptional' outcome of this bankruptcy. They were not. Regardless, the only thing that matters here is whether they are entitled to an enhancement for settling the 'alter ego' case. After all, the bankruptcy court flatly rejected an enhancement claim for the entirety of the bankruptcy case."). ASARCO also acknowledges that the Asbestos Fiduciaries' work in the Alter Ego litigation is a relevant contribution to the bankruptcy's results, although they quibble with the strength of this contribution. Consequently, while the additional

---

[15] This Court finds that tailored enhancements are permissible, especially in circumstances where, as here, the resolution of the issue in question greatly enhances the overall bankruptcy's success. *See supra* note 7. Additionally, this Court notes that fee enhancements have been found or affirmed when counsel's efforts resulted in full payment to creditors. *See In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 574, 579 (Bankr. N.D. Tex. 2004) (awarding a fee enhancement to the debtor's attorney where creditors were paid in full and shareholders received substantial return although debtors entered bankruptcy with virtually no cash); *In re Farah*, 141 B.R. 920, 925 (Bankr. W.D. Tex. 1992) (granting debtor's counsel a 100% fee enhancement largely due to the debt forgiveness of several million dollars, successful sale of several assets, and full payment to all creditors). Here, all creditors were paid. (Mem. Op. OBHT & Pate at 3 and 37) (stating that creditors have been paid in full, including post-petition interest and attorneys' fees).

factors ASARCO cited may be relevant to understanding the overall success of the bankruptcy,
they do not diminish the importance of the Asbestos Fiduciaries' work within the Alter Ego
litigation and, consequently, do not compel or even suggest the conclusion that the Bankruptcy
Court abused its discretion.[16]

The Bankruptcy Court did not abuse its discretion in crediting Stutzman along with the
other Asbestos Fiduciaries for the Alter Ego litigation's results.  There was initially little or no
evidence proving ASARCO's asbestos liability, as indicated by ASARCO's initial $17 million
settlement offer to over 95,000 claimants.  *See* (Proffer of Sander L. Esserman in Support of
Stutzman's Final Application for Approval of Attorney's Fees, Doc. No. 14915 at 17 ¶ 35)
(initial settlement offer).  Due to the work by Stutzman and the other Asbestos Fiduciaries,

---

[16] Three additional points need elucidation.  First, ASARCO's suggestion that this Court view the bankruptcy in its
entirety does not affect the conclusion that the Asbestos Fiduciaries greatly enhanced the viability of the debtor.  In
this case, all creditors were paid and the debtor emerged from the bankruptcy as a viable, if not thriving, company.
*See* (Mem. Op. OBHT & Pate at 9).  As discussed, courts have found rare and extraordinary results when all
creditors were paid. *See In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 574, 579 (Bankr. N.D. Tex. 2004); *In
re I.C.H. Corp.*, Case No. 395–36351 RCM–11 (Bankr. N.D. Tex., June 20, 1997); *In re Farah*, 141 B.R. 920, 925
(Bankr. W.D. Tex. 1992).  By any standard, this bankruptcy was successful and one key to that success was the
resolution of the asbestos claims which was made possible by the Alter Ego litigation.

Second, ASARCO's emphasis that the Bankruptcy Court explicitly found the additional factors discussed in its
"coalescence of factors" argument is misleading insofar as it suggests the Bankruptcy Court inadequately applied its
factual findings.  It is true the Bankruptcy Court recognized—and this Court agrees—that a coalescence of factors
was responsible for the bankruptcy's results. (Mem. Op. OBHT & Pate at 43).  However, the Bankruptcy Court
used this analysis to deny a fee enhancement to the Asbestos Fiduciaries for the entire bankruptcy. (Mem. Op.
OBHT & Pate at 42-43) ("While the work performed by the FCR [Future Claims Representative, Robert Pate] and
OBHT [Oppenheimer] was exceptional, an award based upon their total hours cannot be justified.  The outcome of
this bankruptcy—100% payment of all creditors with interest—was both unforeseen as well as rare and exceptional.
However, such outcome was due to a coalescence of factors . . . .").  Instead, the Bankruptcy Court granted a limited
enhancement for the Alter Ego litigation's results, which it found were both "rare and exceptional" and the direct
result of the Asbestos Fiduciaries' work. (Mem. Op. OBHT & Pate at 43).  Since the Bankruptcy Court's fee
enhancement award was for the Alter Ego litigation's results, this Court need not address other factors relating to the
overall bankruptcy's results as long as the Alter Ego litigation was one of those factors.  It cannot be questioned—
and has not been questioned—that the Alter Ego litigation's resolution contributed to the overall bankruptcy
success.  The fact that other factors also contributed does not diminish the result obtained by the Asbestos
Fiduciaries.

Third, one must remember that the initial debtors in bankruptcy were the Subsidiary Debtors, whose asbestos
exposure eventually helped drag ASARCO into bankruptcy as well.  Resolving this exposure was essential for the
successful resolution of both the parent's and subsidiaries' bankruptcies.  The Bankruptcy Court's enhancement
award was significantly tied to the benefit bestowed upon the Subsidiary Debtors, which in turn allowed for the
successful emergence of the parent.  ASARCO, the parent, could not have emerged successfully from bankruptcy
with the noose of asbestos liability still wrapped around its neck.

ASARCO's liability was established through meticulous document review, analysis, and compilation under extremely trying circumstances. The results from these efforts indicated the fiduciaries could successfully pierce the corporate veil and reach ASARCO's assets. *See* (Asbestos Fiduciaries' Trial Br. on the Alter Ego Litigation, *In re ASARCO, LLC* (No. 05-21207), Doc. No. 12463) (presenting extensive evidence of parent ASARCO's derivative asbestos liability due to its domination/control of the subsidiaries). After being presented with this evidence, ASARCO agreed to fund a trust with roughly one billion dollars, a value 5,882% more than the original offer. When the Bankruptcy Court concluded that Stutzman's establishment of ASARCO's asbestos liability led to the result, it acted within its discretion.

Additionally, the Bankruptcy Court's fee enhancement was based on the high quality of Stutzman's work. (Mem. Op. SBEP at 23). The Bankruptcy Court did not abuse its discretion in making this finding, which was adequately supported by the factual record. Several factors supporting a high quality of representation were found in the Bankruptcy Court's background analysis, including: (1) the handling of novel and difficult questions, (Mem. Op. SBEP at 12) (noting that Stutzman had to navigate and analyze the "substantial hurdles" ASARCO faced for reorganization including "labor strikes, a corporate governance crisis, vast market swings in the price of copper, and a monumental fraudulent transfer claim"); (2) Stutzman's use of broad legal skills required by certain issues at pertinent stages of the litigation, (Mem. Op. SBEP at 12) (recognizing Stutzman's need for both Chapter 11 and asbestos-related claim expertise); and (3) Stutzman's dedication to accomplishing the claimant's objectives in a short time frame, (Mem. Op. SBEP at 13) (noting the time pressures contained in extensive document discovery and the Alter Ego Estimation Proceeding).

This Court also rejects ASARCO's argument that the Bankruptcy Court provided "no rationale" for the 10% figure used for the fee enhancement. In support of its argument, ASARCO references section I.A.4(a) of its brief, which argued the lodestar is entitled to a strong presumption of reasonability, and therefore the fee is presumed reasonable. (Br. for ASARCO at 28). ASARCO concluded that the enhancement should be denied in the face of this presumption. *Id.* Nevertheless, as previously discussed, while the lodestar is presumed to be reasonable, it may be adjusted upward or downward according to the factors in *Johnson* and Section 330.

Despite the factual support for the Bankruptcy Court's findings, ASARCO maintains its objection, arguing that the Bankruptcy Court must justify how it calculated the enhancement in addition to why it enhanced the fees. (Br. for ASARCO at 27) (arguing against the 10% enhancement because the Bankruptcy Court "provide[d] no rationale for this particular number[,]" and because "[c]ourts have rejected such speculative, 'out of a hat' monetary awards") (citing *Neiman-Marcus Grp., Inc. v. Dworkin*, 919 F.2d 368 (5th Cir. 1990)). ASARCO's argument fails for two reasons.

First, *Neiman-Marcus* is inapposite. The case is not directly on point because it relates to a jury verdict for wrongful discharge. *Neiman-Marcus*, 919 F.2d at 372. Additionally, the referenced quote taken in context reaffirms that fee calculations are entitled to substantial discretion: while a jury "may not pull figures out of a hat, its verdict does not fail for mere lack of exhaustive or dispositive evidence so long as a rational basis exists for calculation." *Id.*

Second, the determinations of fee enhancement amounts are subject to abuse of discretion review, and the Bankruptcy Court did not abuse its discretion in awarding the 10% enhancement. There is no requirement that bankruptcy courts justify how they arrived at particular enhancement amounts. "Fee calculation is not an exact science." *In re Farah*, 141 B.R. 920, 926

(Bankr. W.D. Tex. 1992) (internal citations omitted).  As such, "fee enhancements are by their nature subjective . . . ." *Id.*  Therefore, it is unrealistic to expect justifications with particularity, such as rigorous mathematical formulas explaining the enhancement figure and ASARCO has not cited case law requiring such particularity.  Instead, determinations of fee enhancement amounts by bankruptcy courts are subject to discretionary review. *Id.*

The Bankruptcy Court here did not abuse its discretion in arriving at the 10% enhancement of the Alter Ego litigation fees.  The 10% enhancement is consistent with other bankruptcy fee enhancement amounts. *See In re Pilgrim's Pride Corp.*, No. 08-45664-DML-11, 2008 WL 1743673 (Bankr. N.D. Tex. Apr. 29, 2011) (awarding 16.7% to chief restructuring officer), *aff'd, In re Pilgrim's Pride Corp.*, 690 F.3d 650 (5th Cir. 2012); *In re Mirant Corp.*, 354 B.R. 113 (Bankr. N.D. Tex. 2006) (awarding 3.3% to equity lead counsel, 10% to equity local counsel, 18% to the examiner, and 10% to the examiner's counsel); *In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 574 (Bankr. N.D. Tex. 2004) (awarding 10% to debtor's counsel in addition to an upward enhancement of counsel's hourly rates); *In re El Paso Refinery, L.P.*, 257 B.R. 809 (Bankr. W.D. Tex. 2000) (awarding 8.6% to trustee's general counsel); *In re Farah*, 141 B.R. 920 (Bankr. W.D. Tex. 1992) (awarding 100% to debtor's counsel).

Additionally, while bankruptcy courts are not required to present rigorous formulas justifying the enhancement figure, courts have compared the monetary benefits obtained with the pre-enhancement fee award, and awarded a result-based fee enhancement when there existed a substantial disparity between the two figures. *See In re Farah*, 141 B.R. 920, 925 (Bankr. W.D. Tex. 1992) (granting debtor's counsel a fee enhancement because of successful results and the disparity between the pre-enhancement fee amount ($119,640.50) and the result's success (forgiveness of several million dollars in debt)); *compare In re Amberjack Interests, Inc.*, 326

B.R. 379, 390 (Bankr. S.D. Tex. 2005) (denying an enhancement because "Brink's results, although impressive, were merely in the neighborhood of $185,000 against a lodestar fee of approximately $66,000"). Here, Stutzman's pre-enhancement fees constitute roughly .45% of the monetary result they obtained for their clients. The $451,000 enhancement was 10% of the overall Alter Ego litigation fees. Thus, the Alter Ego litigation fees totaled about $4.5 million, or .45% of one billion dollars. The difference between the monetary result obtained in the Alter Ego litigation and the pre-enhancement award does not suggest that the Bankruptcy Court abused its discretion.

In summary, the Bankruptcy Court justified the fee enhancement by referencing Stutzman's role in obtaining the Alter Ego litigation's extraordinary result, the justification was valid as a matter of law, and the justification rested upon sufficient factual support. It is clear that the Bankruptcy Court did not reach this result in a cavalier fashion. While the Asbestos Fiduciaries sought a bonus based upon their work in the entire Bankruptcy Case, *see* (Mem. Op. SBEP at 23); *see also* (Mem. Op. OHBT at 43), the Bankruptcy Court limited the enhancement to a reasonable amount pertaining to a discrete, rare and exceptional result. Therefore, the Bankruptcy Court provided an adequate rationale for the enhancement and did not abuse its discretion in awarding the 10% upwards adjustment for the Alter Ego litigation fees.

## B. Fees and Expenses for the Fee Application and Enhancement Application

ASARCO next argues that Stutzman should not be able to recover any fees and expenses spent defending its fee application and prosecuting its enhancement application. (Br. for ASARCO at 29-32).[17]  The United States Trustee joins in the latter objection against the fee enhancement prosecution costs. (Br. for United States Trustee, Doc. No. 19 at 23-25).

---

[17] This Court notes that, in several filings, ASARCO only raises objections concerning Stutzman's fees rather than its fees and expenses. *See, e.g.*, (Post-Hr'g Resp. Br. for ASARCO at 2) (arguing for a downward revision to the

ASARCO distinguishes between the preparation and defense of fee applications, arguing that Section 330 provides only for the former and not the latter. (Br. for ASARCO at 29-32). ASARCO also relies on *Perdue* and the general American Rule that each party must pay its own attorneys' fees. (Br. for ASARCO at 29-32). The United States Trustee objects only to the enhancement prosecution fee awards, arguing that such awards are contrary to Section 330, relevant precedent, and the American Rule. (Br. for United States Trustee at 23-25).

Stutzman responds that fee application fees and expenses are authorized under Section 330. Stutzman also argues that because fee enhancements are part of Section 330's "reasonable compensation" calculation, if the Court awards the costs of preparing and defending fee applications, it must also award those costs for fee enhancements. *See* (Br. for Stutzman at 47); (Post-Hr'g Br. for Stutzman at 5-6).

The Court recognizes that the jurisprudence lacks agreement regarding whether bankruptcy counsel may recover fees and expenses for fee application preparation and defense. The majority approach awards these fees and expenses, finding that such compensation is necessary to avoid unfair dilution of attorneys' fees. *See, e.g., In re Smith,* 317 F.3d 918, 928 (9th Cir.2002) (awarding the costs of defending and preparing fee applications because "[f]ailure to grant fees for successfully defending challenges to an authorized fee application would dilute fee awards, in violation of section 330(a), and this would reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally"), *abrogated on other grounds by Lamie v. United States Tr.,* 540 U.S. 526, 531–39 (2004); *Boyd v. Engman,* 404 B.R. 467, 483 (W.D. Mich. 2009) (awarding such costs because "[t]o hold

---

award removing fees for the fee enhancement application). Nevertheless, ASARCO objects elsewhere against both the "fees and expenses" relevant to the enhancement application. *See* (Br. for ASARCO at 29). This Court has accepted at face value the $526,989.43 amount to which the Parties have stipulated as enhancement prosecution costs and assumes that it contains all enhancement fee and expense amounts to which ASARCO objects.

otherwise would allow a litigious objecting party to negotiate unwarranted reductions in a fee award simply because the attorney is faced with a no win situation") (citing *In re Worldwide Direct Inc.*, 334 B.R. 108, 111 (D. Del. 2005)).

This Court joins the majority view.  Time spent defending a fee application "is necessary and beneficial to the bankruptcy system as a whole, and indirectly, to each estate participating in the system." *In re Engman II*, 404 B.R. 467, 483 (W.D. Mich. 2009).  This is particularly true when—as was the case here—there is aggressive litigation challenging attorneys' fees. Therefore, the Bankruptcy Court's award of fees and expenses for the pursuit of Stutzman's fee application is affirmed.[18]

This conclusion, however, does not necessitate an award of fees and expenses for preparing and defending the fee enhancement application.  This Court holds that such an award is contrary to Section 330, which authorizes compensation for services that were "necessary" to the administration of the estate. *See* 11 U.S.C. § 330(3)(a)(1)(a).  One factor for determining this amount includes whether the services were "beneficial [to the completion of the case] at the time at which the service was rendered . . . ." § 330(a)(3)(C).

A law firm requesting a fee enhancement over and above the amount due under its existing fee agreement is not performing a necessary service for the estate's administration. Such service is also not "beneficial" to the completion of the case "at the time" such services are rendered.  When attorneys prepare their original, interim, and even final fee applications, they do so before and during their service to the estate.  The estate benefits from these fee applications because they incentivize continued representation and service.  In contrast, fee enhancements are

---

[18] This Court recognizes that several bankruptcy courts have adopted the approach in *In re St. Rita's Assoc. Private Placement, L.P.*, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001), which applied the American Rule. *See, e.g.*, *In re Teraforce Tech. Corp.*, 347 B.R. 838, 866 (Bankr. N.D. Tex. 2006); *In re JNS Aviation, LLC*, 04-21055-RLJ-7, 2009 WL 80202 (Bankr. N.D. Tex. Jan. 9, 2009).  However, for the reasons specified above, this Court declines to apply this approach.

sought at the conclusion of the bankruptcy proceedings for funds over and above the original fees that incentivized representation during the bankruptcy. As such, they are not necessary to the estate's administration, or beneficial to the completion of the case at the time of service. The arguments pertaining to fees and expenses for the preparation and defense of final fee applications do not apply to enhancement requests. Therefore, this Court holds that any fee enhancement preparation and defense costs are not compensable.

The Court acknowledges that in certain circumstances, it might be difficult to separate costs spent prosecuting a fee application from costs spent prosecuting an enhancement. However, it is unnecessary to remand the case for any ambiguity in the facts. As both ASARCO and Stutzman observe, the enhancement's costs are clear from the record. During oral argument and in its Post-Hearing Brief to this Court, Stutzman maintained that the record indicates its fee enhancement prosecution costs total $526,989.43. *See* (Post-Hr'g Br. for Stutzman at 10); (Oct. 25, 2010 Mot. Hr'g at 62).[19] ASARCO agrees with this calculation. (Post-Hr'g Br. for ASARCO at 1) (stating a remand is unnecessary because "[t]he Asbestos Fiduciaries have . . . stipulated to the breakdown between fees incurred to pursue their fee applications on the one hand and fees incurred to prosecute their fee-enhancement claims on the other"). Therefore, the Court hereby partially grants Appellants the relief they request, and subtracts $526,989.43, the amount spent on the pursuit of the enhancement, from the overall amount awarded by the Bankruptcy Court to Stutzman.

---

[19] Stutzman begins these calculations by stating, "the allocation is $430,626.43 to non-enhancement related fees and $481,989.43 in connection with [Stutzman's] enhancement application." (Post-Hr'g Br. for Stutzman at 10) (internal citations omitted). Next, Stutzman states that the $90,000 awarded for work between June 19, 2010 and closing arguments on July 13, 2010, can fairly be divided in half between enhancement and non-enhancement related fees. *Id.* "Hence," Stutzman concludes, "the record supports [Stutzman's] allocation of $475,626.43 to non-enhancement related fees and $526,989.43 in connection with [Stutzman's] enhancement application . . . ." *Id.*

## C. Interest Should Not Be Awarded

Appellants' third argument objects to the post-judgment interest award on Stutzman's final fee awards. Stutzman argues for the interest award under 28 U.S.C. § 1961(a), which provides interest awards to civil money judgments. (Br. for Stutzman at 47). This argument is unpersuasive. Section 330 and Section 1961 suggest that interest may not be awarded. Section 1961 provides interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). An award of legal fees pursuant to Section 330(a) is payment for expenses necessary to enable the system to "operate smoothly, efficiently, and expeditiously." H.R. Rep. No. 595, 95th Cong. 1st Sess. 330 *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6286. As such, fee awards are not money judgments. Instead, they are expense reimbursements. Since orders awarding fees are not civil judgments, Section 1961 does not apply. *See St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003 (4th Cir. 1985). Restated, "Section 1961 is inapplicable to the grant of attorneys' fees in a bankruptcy case because attorneys' fees in bankruptcy are an expense of administering the estate and, therefore, do not constitute a money judgment." *In re El Comandante Mgmt. Co., L.L.C.*, 395 B.R. 807, 818 (D.P.R. 2008).

The Fifth Circuit case, *In re Reed*, 405 F.3d 338 (5th Cir. 2005), is instructive. *Reed* involved whether interest should be awarded to a Chapter 7 bankruptcy trustee's compensation and expenses and, if so, when such interest should accrue. *Id.* at 340. Other circuits award interest, either when the bankruptcy petition was filed (minority view) or when the bankruptcy court granted an award (majority view). *Id.* at 341-42 (internal citations omitted). Nevertheless, upon review, the Fifth Circuit rejected both approaches and held that no interest was due to the trustee. *Id.* at 342. It reasoned that, unlike an interest payment to a creditor as authorized by 11 U.S.C. § 726(a)(5), administrative expenses were in a different category from pre-petition debt.

*Id.* It relied on both a Second Circuit case, *In re Klein Sleep Products Inc.*, 78 F.3d 18 (2d Cir. 1996), and a case of its own, *In re Van Gerpen*, 267 F.3d 453 (5th Cir. 2001), to conclude that administrative claims and creditors' claims against the estate are treated differently. *Id.* at 343. The *Reed* Court ultimately held that the trustee and similarly situated professionals were not entitled to interest on claims for fees and expenses. *Id.* at 344. While not entirely on point, the analysis is certainly analogous: administrative expenses, including fees, are not treated like a judgment mandating interest.

Therefore, post-judgment interest should not be granted. This ruling does not require a remand to the Bankruptcy Court because there was no specific amount of interest awarded in the actual judgment. This Court holds that no interest is due or accruing.

## D. Costs Incurred on Appeal Should be Awarded when Final

ASARCO's last argument is that Stutzman should not recover costs incurred on appeals challenging the fee application. This Court rejects that argument for two reasons. First, the Bankruptcy Court did not grant an award for any appellate costs, thus there is no final decision appealable to this Court. At most, the Bankruptcy Court indicated its willingness to consider such relief in the future. Second, even if any award had been made, fee applicants must be entitled to recover costs spent defending their original core fees and expenses, as long as their application is successful. Otherwise, an appellee's award for fees and expenses would be unfairly diluted each time an appellant chose to further appeal any issue. As with post-judgment interest, however, this conclusion does not require a remand to the Bankruptcy Court because there was no award for costs incurred on appeal.

### III. CONCLUSION

Therefore, the judgment of the Bankruptcy Court is partially affirmed and partially reversed.   This Court partially affirms the judgment of the Bankruptcy Court, including the award of the $451,131.00 enhancement.   It reverses and revises the judgment downward in the amount of $526,989.43, which reflects the stipulated amount of Stutzman's fees and expenses incurred in prosecuting its enhancement application.   It also reverses the Bankruptcy Court's decision to award post-judgment interest.   Accordingly, this Court hereby revises the judgment of the Bankruptcy Court and orders ASARCO to pay Stutzman the amount of fees and expenses approved, but yet unpaid, without the above-referenced costs for pursuing the enhancement and without post-judgment interest.

Signed and ordered this 26th day of November, 2013.

Andrew S. Hanen
United States District Judge